United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MOHAN VALLABHAPURAPU, *et al.*,

Plaintiffs,

v.

BURGER KING CORPORATION,

Defendant.

No. C 11-00667 WHA

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND GRANTING PLAINTIFFS' MOTION TO SUSPEND GENERAL ORDER NO. 56**

## INTRODUCTION

In this follow-on action to an earlier ADA action concerning the accessibility of Burger King franchise restaurants in California, defendant moves to dismiss for failure to join necessary parties under FRCP 19 and for lack of standing as to certain franchises, and plaintiffs move to suspend General Order No. 56. For the reasons stated below, defendant's motion to dismiss is **DENIED**, and plaintiffs' motion to suspend General Order No. 56 is **GRANTED**.

## STATEMENT

This action is a follow-on to a prior action called *Castaneda v. Burger King Corporation*, 3:08-cv-04262-WHA. Counsel are the same. Both concern alleged ADA and state-law violations by defendant Burger King Corporation at assertedly inaccessible restaurants in California that Burger King leases to franchisees. There are 96 such restaurants in California. In *Castaneda*, an order certified 10 classes, one for each of 10 restaurants at which plaintiffs had visited and encountered access barriers, and a settlement was thereafter reached concerning the 10 restaurants. That left 86 Burger King restaurants in California that were leased to franchisees for

which classes were not certified in *Castaneda*. This new complaint brings the same claims and asserts class action allegations as to the remaining 86 restaurants.

The order in *Castaneda* denying defendant's motion to dismiss described succinctly the allegations therein:

> Plaintiff, a resident of California, has incomplete quadriplegia and uses a wheelchair for mobility. . . . Plaintiff alleges access violations at roughly 90 of Burger King's approximately 500 restaurants in California: those that Burger King leases to or from other entities ("leased stores") (Compl. ¶¶ 10–12, 23–24). [footnote omitted]
>
> Plaintiff alleges that the leased restaurants deny customers who use wheelchairs or scooters access to restaurant services on account of architectural or design barriers or discriminatory policies or practices. Those access barriers include inaccessible parking lots, entry and restroom doors that are too heavy, queue lines (to order food) that are too narrow for wheelchairs, inaccessible dining areas, and inaccessible restrooms. Plaintiff alleges that these access barriers are a result of intentional discrimination against the putative class (Compl. ¶¶ 1–2, 39–40, 44).
>
> The complaint alleges that plaintiff has patronized "several" Burger King restaurants in California, including a restaurant at 677 Contra Costa Boulevard in Pleasant Hill and one at 2162 Railroad Avenue in Pittsburg, both allegedly leased restaurants. Plaintiff encountered access barriers such as those described above at those restaurants (Compl. ¶¶ 41–42).
>
> Although the complaint does not purport to challenge a single, identical architectural design or access policy at all of the (approximately) 90 leased restaurants, it alleges several common characteristics among the leased restaurants. It alleges that some or all of those stores were built according to "one or a limited number of architectural design prototypes developed by Burger King." It alleges that Burger King exercises substantial control over some or all of the leased restaurants, including over the development, design, alteration, remodel, maintenance and operation of those restaurants. Burger King, it avers, has entered into development agreements requiring construction of some or all of the California restaurants, or the performance of "re-imaging" programs at those restaurants, in accordance with Burger King designs; has provided building plans used to construct some or all of those restaurants; and has provided construction teams to aid in designing and building some or all of those restaurants. Finally, the complaint alleges that some or all of the leased restaurants are required to comply with Burger King's Manual of Operating Data ("MOD"), which contains official operating standards and procedures (Compl. ¶¶ 25–34).
>
> Plaintiff alleges that some or all of the leased restaurants have been altered since 1992, when the ADA regulations regarding alterations went into effect. Plaintiff further alleges that some or all of those stores have undergone alterations, structural repairs and/or additions since 1970, when California access regulations went into effect (Compl. ¶¶ 37–38).
>
> Plaintiff brings this action on behalf of a putative class that includes all individuals with manual and/or mobility disabilities who use wheelchairs or electronic scooters and who were thereby denied access by the alleged barriers.

2

> The class is alleged to consist of "at least several thousand members" dispersed across California (Compl. ¶¶ 13–14).
>
> The complaint asserts three claims. The first claim asserts violations of the Americans with Disabilities Act. 42 U.S.C. 12182(a). The second claim arises under California's Unruh Civil Rights Act. Cal. Civ. Code §§ 51 *et seq*. The third claim is for violations of California's Disabled Persons Act. Cal. Civ. Code §§ 54 *et seq*. The complaint seeks declaratory and injunctive relief under the ADA, and minimum statutory damages for the two state claims.

(Dkt. No. 69). The complaint in our new case is very similar, except that it explicitly targets only the 86 restaurants omitted from certification in *Castaneda*. The named plaintiffs now number 27. They all are alleged to have disabilities that confine them to a wheelchair or scooter for mobility (Compl. ¶¶ 12–38). Plaintiffs again allege access violations at the remaining restaurants in California that Burger King leases to or from other entities, *i.e.* the franchisees (Compl. ¶ 6).

Plaintiffs again allege that the leased restaurants deny customers who use wheelchairs or scooters access to restaurant services on account of architectural or design barriers as a consequence of discriminatory policies or practices. Those access barriers include entry and restroom doors that are too heavy, and inaccessible restrooms, parking lots, paths of travel to service counters, service counters, dining areas, and drink and self-service dispensers. Plaintiffs allege that these access barriers are a result of intentional discrimination against the putative class (Compl. ¶¶ 1, 4, 161).

The complaint contains extensive allegations concerning which targeted Burger King restaurants have been patronized by plaintiffs, where they allegedly encountered such access barriers (Compl. ¶¶ 12–38, 79–159). As with *Casteneda*, the complaint does not challenge a single, identical architectural design or access policy at all of leased restaurants, but rather it alleges common characteristics among them and that Burger King exercises control over their development, design, remodel, alteration, maintenance, and operation (Compl. ¶¶ 64–76). The complaint alleges that some or all of the leased restaurants have been altered since 1992, when the ADA regulations regarding alterations went into effect, and that some or all have undergone alterations, structural repairs and/or additions since 1970, when California access regulations went into effect (Compl. ¶¶ 77–78).

3

Plaintiffs bring this action on behalf of a putative class that includes "all individuals who use wheelchairs or electronic scooters for mobility who, . . . on the basis of disability, were denied the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations in any Remaining BKL because of noncompliance with Disability Access Requirements pertaining to width of accessible parking spaces and access aisles, excessive door force, lack of or obstructed accessible routes, and/or customer self-service dispensers" (Compl. ¶ 41). This class is alleged to consist of more than a thousand members from across California (Compl. ¶ 42). Plaintiffs also seek certification of 67 subclasses to be represented by specified named plaintiffs who visited each specific restaurant (Compl. ¶¶ 51–53).

The complaint asserts three claims: (1) violation of the Americans with Disabilities Act, 42 U.S.C. 12181 *et seq.*; (2) violation of the California Unruh Civil Rights Act, CAL. CIV. CODE § 51 *et seq.*; and (3) violation of the California Disabled Persons Act, CAL. CIV. CODE § 54 *et seq.* The complaint seeks declaratory and injunctive relief, and minimum statutory damages for the two state-law claims.

Further detail about motion practice in *Castaneda* will be reviewed below, because its review is vital to resolution of the instant motions, which raise issues identical to those raised in *Castaneda*. At the conclusion of discovery in *Castaneda* but before motions for partial summary judgment were heard, the parties settled. Preliminary, and later final, approval of the settlement was granted (*Castaneda* Dkt. Nos. 342 and 361).

**ANALYSIS**

This and the *Castaneda* actions raise nearly identical legal issues, as acknowledged by the parties. Counsel for both sides are obviously well aware of the rulings in *Castaneda*, as they were counsel there as well. Yet, defendant raises identical arguments in its motion to dismiss to those raised in *Castaneda*, thinking that — despite no change in the law or the pleadings — the result might be different the second time around. Defense counsel has cut and pasted sections of its briefs in *Castaneda* (briefs in support of motions that they lost), into their current briefs (*compare Castaneda* Dkt. No. 29 at 4–11 *with* Dkt. No. 15 at 18–23 (identical standing argument), and

4

1  *compare Castaneda* Dkt. No. 145 at 6–14 *with* Dkt. No. 15 at 7–16 (identical Rule 19 argument)).

2  Defendant adds no new arguments. Defendant adds no new law.

3  Perhaps Burger King can be forgiven for copying its prior arguments, given that the

4  complaint itself is a copy of the earlier one. But still, after further reflection, the rulings will be

5  the same.

6  In *Castaneda*, one of the first things that happened was that plaintiffs moved to compel

7  compliance with General Order No. 56. At a hearing on the dispute, the undersigned stated:

8  "General Order 56 wasn't meant for this kind of situation, so I'm going to suspend it" (Dkt. No.

9  31 at 19). That order was memorialized in a written order, which stated: "General Order 56 is

10 suspended as it applies to this case. Discovery is now permitted" (Dkt. No. 18). Plaintiffs now

11 move to suspend General Order No. 56. For the same reasons as in *Castaneda*, General Order

12 No. 56 was not meant for this type of case, so it is therefore suspended here.[*] Plaintiffs' motion is

13 accordingly **GRANTED**.

14 The first of two arguments in defendant's motion to dismiss — identical to its argument in

15 *Castaneda* — is that certain class allegations, those concerning restaurants that the named

16 plaintiffs did not visit, should be dismissed for lack of standing under Rule 12(b)(1). This same

17 argument was made — and denied — in *Castaneda*. Docket number 69, pages four through

18 eleven, is incorporated herein by reference. That order went through detailed analysis of why

19 plaintiffs do not lack standing to assert claims with respect to those restaurants they have not

20 allegedly visited. It concluded: "[This] has been a maneuver to defeat class certification in

21 advance by denying all class discovery and insisting that plaintiff[s] prove up [their] Rule 23

22 motion within the four corners of the pleading. This is topsy-turvy. . . . This should not be

23 decided as a matter of the pleadings." Nor should it now.

---

[*] Defendant does raise an issue not presented in *Castaneda* regarding the potential implications of the California Construction-Related Accessibility Standards Compliance Act, CAL. CIV. CODE § 55.54. Burger King solely appears to argue, however, that General Order No. 56 should not yet be suspended because the *franchisees* — as opposed to Burger King itself — should be given an opportunity to litigate this issue (Opp. 6–8). Because defendant's motion to dismiss to bring the franchisees in as parties is denied below, this argument is irrelevant.

5

As stated above, defendant's arguments here are verbatim to those made preceding the above-cited order denying defendant's motion to dismiss in *Castaneda* (*compare Castaneda* Dkt. No. 29 at 4–11 *with* Dkt. No. 15 at 18–23). Although defense counsel assert that the post-pleading factual findings in *Castaneda* should allow them to ignore the difference between pleading and class certification standards of review here (*see, e.g.*, Reply 12), this is not the law now any more than it was then. For the same reasons, defendant's motion to dismiss for lack of standing under Rule 12(b)(1) is **DENIED**.

The second of two arguments in defendant's motion to dismiss is again identical to the argument made in *Castaneda* that the individual franchisees who run each Burger King location targeted by the complaint are necessary under Rule 19, and thus the complaint should be dismissed under Rule 12(b)(7) (*compare Castaneda* Dkt. No. 145 at 6–14 *with* Dkt. No. 15 at 7–16). Unlike here, however, this argument was only raised in *Castaneda* at the motion for class certification stage, via a separate motion by defendant. Defendant moved at that time for "an order requiring Plaintiffs to add the franchisees/lessees of the restaurants at issue in this case as additional defendants in this litigation" (Dkt. No. 145 at 1). Despite the difference in timing, defendant's motion under Rule 19 was denied by the order granting class certification. Instead, that order allowed *permissive* joinder of the franchisees under Rule 20.

Defendant now points to language in that order justifying permissive joinder in support of its instant motion:

> Here, the franchisees/lessees operate and maintain the facilities in question and, under the terms of their lease agreements with Burger King Corporation, must indemnify Burger King Corporation for any accessibility violations that occur. Plaintiffs do not dispute that the franchisees/lessees are jointly and severally liable with Burger King Corporation for any violations, or that the claims against them do not arise out of the same transactions and occurrences. The joinder of the franchisees/lessees, furthermore, will be useful in efficiently effecting any necessary injunctive relief at the stores under their control.

(Dkt. No. 226 at 26–27). Defendant ignores that Rule 19 joinder was *denied*. This must be repeated because defendant's current motion equates permissive joinder in *Castaneda* with a finding that the franchisees are necessary parties under Rule 19, which the *Castaneda* order specifically did *not* find. Plaintiffs never joined the franchisees, and *Castaneda* was settled

6

*without* the franchisees as parties. Pursuant to that settlement, Burger King conducted work on the premises of the *Castaneda* restaurants.

This order must note that in addition to *Castaneda* and the instant action, there is an in-between lawsuit called *Newport et al. v. Burger King Corporation*, 3:10-cv-04511-WHA, which has also been related before the undersigned judge, in which the franchisees of restaurants at issue in *Castaneda* are suing Burger King for declaratory relief and certain damages resulting from *Castaneda*. Contrary to defendant, this does not show that the franchisees should be brought in as necessary parties here under Rule 19. Rather, it shows that defendant's intention to name the franchisees as parties under *Rule 14* may make sense — so defendant avoids a fourth lawsuit down the road. That does not change the Rule 19 inquiry, however. This action, based on nearly the same issues as *Castaneda*, is well able to proceed without the individual franchisees being brought in as defendants, just as it was before.

In addition, the Burger King franchise agreement, which is signed by all of the franchisees who run the restaurants targeted by the complaint, states that "BKC shall have the unrestricted right to enter the Franchised Restaurant to conduct such activities as it deems necessary to ascertain Franchisee's compliance with this Agreement" (Franklin Decl. Exh. A at 6). And Burger King restaurants must be "constructed and improved in the manner authorized and approved" by Burger King (*id.* at 3). Furthermore, defendant acknowledges that before the franchisees can make any changes to the premises *they* have to get *Burger King's* written consent (Archer Decl. Exh. A–E at § 5.3). And if a franchisee does not make required repairs, Burger King "may enter the Premises for the purpose of making such Repairs," and may bill the franchisees for the costs and expenses incurred (*id.* at § 5.2).

Three franchisee owners have filed declarations in which they describe how Burger King conducted surveys of their restaurants and directed changes for access compliance, which the franchisees completed (Patel, Rubin, and Cook Decls.). Defendant does not challenge, and in fact acknowledges, that it maintains all of these powers over restaurant premises (*see, e.g.*, Reply 5–6). The franchisees have "specially appeared" through counsel to make clear that they do not

7

want to be named as parties. For the reasons stated, this action need not be dismissed pursuant to Rule 12(b)(7), and accordingly defendant's motion to dismiss is **DENIED**.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss for failure to join required parties under FRCP 19 and for lack of standing as to certain class allegations is **DENIED**, and plaintiffs' motion to suspend General Order No. 56 is **GRANTED**. This order is without prejudice to a motion under FRCP 14 or the issue of third-party severance.

**IT IS SO ORDERED.**

Dated: May 6, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

8