1

2

3

4

5

6

7    IN THE UNITED STATES DISTRICT COURT

8    FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10   MOHAN VALLABHARPURAPU, et al.,          Case No.: 11-cv-667 WHA (JSC)

11                                            **ORDER RE: PLAINTIFFS' MOTION TO
     COMPEL DISCOVERY RESPONSES**

12          Plaintiffs,                       **(Dkt. No. 61)**

13   vs.

14

15   BURGER KING CORPORATION,

16

17          Defendant.

18

19          Now pending before the Court are Plaintiffs' Motion to Compel Discovery Responses

20   (Dkt. No. 61) and Defendant's opposed Motion for Leave to File a Surreply (Dkt. No. 123).

21   Having considered the parties' written submissions, and having had the benefit of oral

22   argument on September 15, 2011, the Court GRANTS Defendant's Motion for Leave to File

23   a Surreply and GRANTS Plaintiffs' Motion to Compel.

24                    **FACTUAL & PROCEDURAL BACKGROUND**

25          This putative class action was filed by 27 individuals who use wheelchairs or scooters

26   for mobility.  Plaintiffs allege they have encountered access barriers at 86 Burger King

27   restaurants ("BKLs") in California which are leased by the Burger King Corporation

28   ("BKC") and were not part of the settlement reached in a prior class action against BKC,

United States District Court
Northern District of California

<u>Castaneda v. Burger King Corp.</u>, No. 08-04262 WHA (N.D. Cal.).  Plaintiffs bring suit on behalf of a putative class consisting of "all individuals who use wheelchairs or electronic scooters for mobility who, . . . on the basis of disability, were denied the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations in any Remaining BKL because of noncompliance with Disability Access Requirements pertaining to width of accessible parking spaces and access aisles, excessive door force, lack of or obstructed accessible routes, and/or customer self-service dispensers."  (Dkt. No. 1 ¶ 5).  Plaintiffs also intend to seek certification of 67 subclasses based on the 67 BKLs the named Plaintiffs personally visited.  The complaint makes claims under Title III of the Americans with Disabilities Act ("ADA"), the Unruh Civil Rights Act, California Civil Code § 51, and the California Disabled Persons Act, California Civil Code § 54.

The pending motions arise from Plaintiffs request for production of architectural surveys performed of the BKLs in 2008 and information relating to those surveys and any access barriers removed as a result.  <u>See</u> Plaintiffs' First Request for the Production of Documents, Nos. 1 and 7 and First Set of Interrogatories, Nos. 17 and 22.  Plaintiffs sought discovery of these same surveys in the <u>Castaneda</u> action.  The magistrate judge found that the surveys were protected work product, but held that the plaintiffs had demonstrated substantial need for the factual information in the surveys and thus were entitled to the surveys redacted to exclude legal theories or strategies.  <u>See</u> <u>Castaneda v.  Burger King Corp.</u>, 259 F.R.D.194, 199 (N.D. Cal. 2009).  The district court denied BKC's objections to the magistrate judge's order.  (Castaneda Dkt. No. 222).  Following certification of ten subclasses based on the ten restaurants the named plaintiffs visited, the district court ordered BKC to produce the surveys for the ten certified restaurants 70 days before trial.  (Castaneda Dkt. Nos. 238, 253).  Because <u>Castaneda</u> settled prior to trial, the surveys were never produced.

//

//

//

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." See Fed. R. Civ. P. 26(b)(1).  In a putative class action such as this, "often the pleadings alone will not resolve the question of class certification and some discovery will be warranted." Vinole v. Countrywide Home Loans, Inc., 571 F.3d 935, 942 (9th Cir. 2009).  Pre-certification discovery lies within the "sound discretion of the trial court." Kamm v. Cal. City Dev. Co., 509 F.2d 205, 209 (9th Cir. 1975).   Because the propriety of a class action often cannot be determined without discovery "the better and more advisable practice for a District Court to follow is to afford the litigants an opportunity to present evidence as to whether a class action was maintainable." Vinole, 571 F.3d at 942 (internal quotation marks and citation omitted).  However, the burden remains on the discovery-propounding plaintiff to make "a prima facie showing that the class action requirements of Fed. R. Civ. P. 23 are satisfied or that discovery is likely to produce substantiation of the class allegations." Mantolete v. Bolger, 767 F.2d 1416, 1424 (9th Cir. 1985).

The attorney work-product doctrine protects materials prepared in anticipation of litigation that reflect an attorney's strategy, intended lines of proof, impressions, and inferences drawn from interviews.  See Fed. R. Civ. Pro. 26(b)(3); Hickman v. Taylor, 329 U.S. 495, 511 (1947).   Materials otherwise protected by the work-product doctrine may be discoverable if 1) "they are otherwise discoverable under Rule 26(b)(1); and 2) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A).   Although the work-product doctrine protects documents, it does not protect factual information within the documents.  "One party may discover relevant facts known or available to the other party, even though such facts are contained in a document which is not itself discoverable." Fed. R. Civ. P. 26(b)(3) Advisory Comm. Note, 48 F.R.D. 487, 501 (1970).  "The work-product doctrine applies to litigation other than that anticipated if the

litigation is sufficiently related."  In re PolyMedica Corp. Securities Litigation, 235 F.R.D. 28, 32 (D. Mass. 2006) (internal citation omitted).

**DISCUSSION**

As is discussed more fully below, in Castaneda BKC was ordered to produce the surveys to the plaintiffs.  Here, Plaintiffs seek production of the surveys for the 86 BKL restaurants not covered by the Castaneda settlement.  The inquiry into Plaintiffs' request is two-fold.  First, is the discovery relevant?  Second, are the surveys discoverable work product?

**A.  Relevance**

**1.  Oliver v. Ralph's Grocery Co.**

In reliance on the Ninth Circuit's recent decision in Oliver v. Ralphs Grocery Co., 2011 WL 3607014 (9th Cir. Aug. 17, 2011), Defendant argues that Plaintiffs are only entitled to challenge barriers that they specifically identified in the Complaint.  Thus, Defendant contends, Plaintiffs should not be permitted to use the surveys to identify additional barriers and seek redress regarding those barriers; instead, Plaintiffs' claims should be limited to the access barriers pled in the complaint with respect to the 67 restaurants visited by the named Plaintiffs.  Plaintiffs respond that Oliver is inconsistent with prior Ninth Circuit precedent including Skaff v. Meridien N. Am. Beverly Hills, LLC, 506 F.3d 832, 841-42 (9th Cir. 2007), and Chapman v. Pier 1 Imports (U.S.) Inc.,631 F.3d 939 (9th Cir. 2011), and that, in any event, they have properly pled the access barriers.

The Court finds it unnecessary to reach this issue because it is not relevant to the question of whether the discovery at issue here is appropriate.[1]  It is well established that a party may obtain discovery regarding any nonprivileged matter relevant to any claim or defense.  See Fed. R. Civ. P. 26(b)(1).  "Consistently with the notice-pleading system

---

[1] The Court notes, however, that Oliver is distinguishable as an individual action, as opposed to the putative class action pled here.  See Moeller v. Taco Bell Corp., No. 02–5849, 2011 WL 4634250, at *18 (N.D. Cal. Oct. 5, 2011) (concluding that "[t]o apply the reasoning in Oliver to a class action would arguably vitiate Federal Rule of Civil Procedure 23").

United States District Court
Northern District of California

United States District Court
Northern District of California

established by the Rules, discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351(1978)(internal citations omitted).  Plaintiffs are entitled to discovery regarding their claims generally, not just the specific factual claims pled in their Complaint.  Moreover, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b).   It is undisputed that the surveys contain information that is relevant to Plaintiffs' claims.  The questions of whether that information will be admissible at trial or whether the district court will at some later date grant Defendant's as yet unfiled motion for summary judgment, are different issues which the Court need not reach at this time.

**2.  Relevance to class certification**

The next question is whether the discovery is relevant to class certification.  Although pre-certification discovery is discretionary, courts generally permit such discovery if it would substantiate the class allegations or if plaintiff makes a prima facie showing that the requirements of Rule 23 are satisfied.  See Mantolete v. Bolger, 767 F.2d 1416, 1424 (9th Cir. 1985

The Court finds that Plaintiffs have met their burden of establishing entitlement to pre-certification discovery of the surveys.  To the extent the surveys at issue identify common access barriers in the BKLs, that information could support a finding of commonality for class certification purposes.  Indeed, the court in Castaneda found that plaintiffs had not established commonality with respect to the class as a whole because they had not "shown either a common core of salient facts-that Burger King Corporation created common barriers to access across multiple restaurant locations-or a shared legal issue- whether there were violations of the ADA or California statutes at each location." Castaneda v. Burger King Corp., 264 F.R.D. 557, 567 (N.D. Cal. 2009).  The survey information could substantiate Plaintiffs' claim that there are shared legal issues among the class members with respect to all or some of the restaurants.  That the Castaneda plaintiffs obtained certification with respect to some restaurants without the surveys does not mean the surveys are

5

irrelevant.  Defendant has not stipulated to certification and, as explained above, the surveys are directly relevant to whether the putative class faced common barriers or present common legal questions.

Further, given the similarity of the issues and the parties in this action to Castaneda, Plaintiffs have made out a prima facie case for certification at least as to the 67 BKLs visited by the named Plaintiffs.   See Kress v. Price Waterhouse Coopers, No. 08-0965, 2011 WL 3501003, at *3 (E.D. Cal. Aug. 9, 2011) (finding that "because the district court found sufficient reasons to certify the class in [a prior case], there exists in all probability at the very least, a prima facie case for class certification in this related case" and allowing pre-certification discovery).   Again, there is no dispute that the survey information is relevant to the merits of this case.

**B. Issue Preclusion**

As a preliminary matter, the Court must decide whether BKC is collaterally stopped from relitigating the issue of whether the surveys are protected work product and whether Plaintiffs have demonstrated substantial need sufficient to overcome the work product protection.  "The doctrine of issue preclusion prevents relitigation of all 'issues of fact or law that were actually litigated and necessarily decided' in a prior proceeding." Robi v. Five Platters, Inc., 838 F.2d 318, 322 (9th Cir. 1988)(internal citations omitted).  Plaintiffs contend that the magistrate judge's order in Castaneda and the subsequent district court denying BKC's objections and denying a stay pending appeal of those orders conclusively determined the issues regarding the surveys.

A finding of offensive nonmutual issue preclusion is appropriate where:

 (1) there was a full and fair opportunity to litigate the identical issue in the prior action;(2) the issue was actually litigated in the prior action; (3) the issue was decided in a final judgment; and (4) the party against whom issue preclusion is asserted was a party or in privity with a party to the prior action.

Syverson v. International Business Machines Corp., 472 F.3d 1072, 1078 (9th Cir. 2007)(internal citations omitted).  Although the Castaneda court decided the same issues

United States District Court
Northern District of California

before this Court with respect to the surveys, the case ended in settlement rather than via a final judgment with the right to appeal.  This is a crucial distinction.

Issue preclusion is generally not applied to cases without a final judgment.  In <u>Inouye v. Kemna</u>, 504 F.3d 705, 708 (9th Cir. 2007), for example, the Ninth Circuit noted about a case that was dismissed following settlement, "[b]ecause there was no final judgment on the merits in the case, [a prior decision regarding qualified immunity] has no issue preclusion effects here."  Further, courts generally do not apply issue preclusion to nonappealable decisions.  <u>See</u>, <u>e.g.</u>, <u>Dixon v. Wallowa County</u>, 336 F.3d 1013, 1020 (9th Cir. 2003) (internal citations omitted).  Accordingly, the Court concludes that issue preclusion does not apply to the <u>Castaneda</u> findings because the issues were not decided in the context of a final judgment with the concomitant right to appeal.

## C.  **The Work Product Doctrine and Substantial Need**

Federal Rule of Civil Procedure 26(b)(3) codifies the work product doctrine and shields from discovery documents and tangible things prepared by a party or its representative in anticipation of litigation.  <u>See</u> <u>In re Grand Jury Subpoena (Torf )</u>, 357 F.3d 900, 906 (9th Cir. 2004).  The surveys at issue here were prepared by BKC in anticipation of litigation by Plaintiffs; they are thus entitled to work-product protection.

Plaintiffs can overcome the work product protection if they can show they have a "substantial need for the materials to prepare [their] case and cannot, without undue hardship, obtain their substantial equivalent by other means."  Fed.R.Civ.P. 26(b)(3)(A).  Defendant contends that Plaintiffs cannot show a substantial need because they could have conducted their own surveys.  The Court disagrees and finds that Plaintiffs have met their burden.

Based on access barrier complaints from dozens of Burger King customers who use wheelchairs and scooters for mobility, and on surveys of 31 of the over 600 Burger King restaurants in California, plaintiffs sent a demand letter to BKC in January 2008.  Plaintiffs filed Castaneda in September 2008.  In the meantime, and again after the lawsuit was filed, Plaintiffs asked BKC to identify which restaurants were leased by or to BKC, but BKC

7

United States District Court
Northern District of California

refused, with the exception of five restaurants.  BKC finally identified the leased restaurants in December 2008, and then only in response to a discovery request.  BKC did offer to identify whether any particular restaurant visited by the named plaintiffs was leased if plaintiffs would give BKC the name and address of the restaurant, but it otherwise refused to provide plaintiffs with the requested information.  In addition, and just prior to filing suit, plaintiffs asked BKC to document the conditions of its restaurants before it made any changes or, at a minimum, to give plaintiffs notice before such changes were made.  In April 2009, plaintiffs learned for the first time that BKC had made alterations at the leased restaurants without giving plaintiffs prior notice so that they could conduct their own surveys before changes were made.

Thus, the only way Plaintiffs could have obtained their own surveys of the restaurants at issue before BKC altered the premises was to have surveyed each of the over 600 restaurants to obtain relevant information regarding what turned out to be approximately 90 leased restaurants.  Plaintiffs estimated that conducting these 600 surveys would have cost between $630,000 and $825,000 and taken two to two and a half years to complete and thus they decided not to do so.  Ultimately, only five of the 31 surveys Plaintiffs performed were of leased BKLs.  In these circumstances, it would be unreasonable to conclude that Plaintiffs should have surveyed all of the over 600 restaurants themselves.  BKC could have shared the leasing information with Plaintiffs--and thus allowed Plaintiffs to conduct their own surveys without wasting thousands of dollars and hours on unnecessary surveys--without waiving their apparent argument that Plaintiffs lack standing to challenge any restaurant they did not personally visit.  To hold otherwise would merely encourage defendants in such cases to secretly "race to the contractor" to reduce the possibility that a plaintiff will be able to prove her case.

Moreover, Plaintiffs also attempted to obtain information regarding the condition of the restaurants from sources other than BKC's surveys.  Plaintiffs reviewed store specific documents at BKC headquarters, but did not find any information relevant to the physical condition of the restaurants prior to the remediation.  Plaintiffs also reviewed 5,595 pages of

United States District Court
Northern District of California

documents from the relevant permitting agencies.  Only one of these documents obtained the type of information sought.  Finally, Plaintiffs served third-party subpoenas on the individual franchisees and took depositions of franchisee owners, but neither provided relevant information.[2]  Thus, the only present source of information regarding the state of the restaurants prior to the remediation efforts is the BKC surveys.

Defendant's reliance on <u>Martin v. Bally's Park Place Hotel & Casino</u>, 983 F.2d 1252, 1263 (3rd Cir. 1993) is misplaced.  The <u>Bally</u> court found that OSHA had not demonstrated undue hardship sufficient to overcome the claim of work product where "OSHA had the technical capability to conduct the tests, where the resources necessary to conduct the tests were not shown to have been prohibitive, and where in the face of [the defendant's] consistent refusal to share the tests [OSHA] never explored the option of conducting its own tests."  <u>Id</u>.  Here, as discussed above, Plaintiffs were faced with the prospect of surveying over 600 restaurants at a cost of over half a million dollars – conducting the surveys under these circumstances would have been resource prohibitive.  Further, they asked BKC to identify the leased restaurants so that Plaintiffs could conduct their own surveys.  Plaintiffs have thus met their burden of demonstrating that they could not obtain the substantial equivalent of the survey information without undue hardship.

<u>Equal Rights Ctr. v. Post Props., Inc.</u>, 247 F.R.D. 208, 211 (D. D.C. 2008), is similarly inapposite.  There the plaintiffs sought production of disability access compliance reviews, but the court found they had not established substantial need because the plaintiffs had not made independent efforts to obtain the information including reviewing "any development and construction files or site plans and maps that have been offered at Post's office since October 17, 2007 [or noticing] any depositions of Post employees that may have knowledge of the changes Post has and has not made at its properties."  <u>Id</u>. at 212.  Here, in contrast, Plaintiffs did attempt to obtain the information via reviewing documents from the local permitting agencies, noticing a Rule 30(b)(6) deposition regarding compliance efforts

---

[2] A few of the franchisees actually turned over the surveys at issue in response to the third-party subpoena, but BKC subsequently requested that they be returned or sequestered.

United States District Court
Northern District of California

1   and deposing various franchisee owners.  However, none of these efforts produced the

2   information sought.

3          In sum, despite Plaintiffs' good faith efforts to obtain the data themselves, the BKC

4   surveys are the only source of information regarding the condition of the BKLs prior to

5   remediation.  Plaintiffs have demonstrated a substantial need for the surveys and that they

6   cannot obtain the information within the surveys from any other source.  Plaintiffs are thus

7   entitled to the factual information in the surveys.  This result is especially warranted given

8   that the information sought—measurements and photographs—is not itself protected work

9   product.  Accordingly, Defendants shall produce the surveys redacted to remove any

10  opinions, impressions, or strategies.  This is the same production that was required in

11  <u>Castaneda</u>.

12                                  **CONCLUSION**

13         Based on the foregoing, Plaintiffs have demonstrated substantial need for the

14  discovery at issue in Plaintiffs' First Request for the Production of Documents, Nos. 1 and 7.

15  The Court finds that it would be overly burdensome and cumulative for Defendant to also

16  provide this information in response to Plaintiffs' First Set of Interrogatories, Nos. 17 and

17  22.  Accordingly, Plaintiffs' Motion to Compel (Dkt. No. 61) IS GRANTED in part.

18  Defendant's Motion for Leave to File a Surreply (Dkt. No. 123) is also GRANTED.

19  Defendant shall provide Plaintiffs with the responsive documents redacted to remove any

20  opinions, impressions or strategies within 7 days after the filing date of this Order.

21         **IT IS SO ORDERED.**

22  Dated:  October 14, 2011

23                                  _____
                                    Jacquline S. Corley
24                                  JACQUELINE SCOTT CORLEY
                                    UNITED STATES MAGISTRATE JUDGE
25

26

27

28