United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOHAN VALLABHAPURAP, RON SARFATY, KENNETH KILGORE, TYREY MILLS, a minor, by and through his next friend and mother GINENE MILLS, JENILYN JIMENEZ, ELIZABETH BAKER, WILLIAM FARBER, UVERDA HARRY, DANIEL HERNANDEZ, KATHRYN TYLER, PRISCILLA WALKER, RICHARD FELIX, KATHLEEN GONZALEZ, JUDY CUTLER, DIANE DAILEY, CAROL LACHER, BETHANY McCLAM, ERIK NIELAND, CAROL PICCHI, WILLIAM SHOWEN, ANNE CASEY, GEORGE PARTIDA, KITTY DEAN, ALFRED BROWN, MARSHA SHINING WOMAN, GOLDENE SPRINGER, and DANIEL XENOS on behalf of themselves and others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> BURGER KING CORPORATION, <br><br> Defendant. | No. C 11-00667 WHA <br><br><br><br><br><br> **ORDER RE BKC MOTION FOR RELIEF FROM DISCOVERY ORDER OF MAGISTRATE JUDGE** |

Burger King Corporation seeks relief from an order of Magistrate Judge Jacqueline Corley requiring BKC to produce for inspection and copying numerous disability-access surveys of BKC stores detailing architectural measurements. Relief is sought on the ground that the surveys are trial-preparation materials protected by Rule 26(b)(3). For the following reasons, relief is **DENIED**, save for the conditions imposed at the end of this order.

The Court has read the *Chapman*, *Doran*, and *Oliver* decisions in controversy and holds that, contrary to BKC, they do not bar Judge Corley's ruling. An ADA plaintiff can obtain only injunctive relief under ADA but can seek an injunction to remedy *all* barriers related to his disability, not just the ones he encountered, so long as the Article III standing is satisfied, the tests therefor being likelihood of future barrier encounters or a claimant being deterred from returning again. The complaint must, *Chapman* holds, specify the essential elements of Article III standing. *Chapman* further holds that it is not enough to allege merely that the plaintiff is "physically disabled," that he "visited the store" and "encountered architectural barriers that denied him full and equal access," even when the complaint appends an inaccessibility survey listing barriers. The complaint must connect the alleged violations to the plaintiff's disability or at least indicate whether or not he encountered any one of them in such a way as to impair his full and equal enjoyment of the store. (*Doran* is merely a prequel to *Chapman*.)

*Oliver*, however, holds that under Rule 8, an ADA complaint itself must identify the barriers that constitute the grounds for a claim of discrimination under the ADA. It will rarely be enough to list all the unpled barriers in an expert report served near or at the end of the discovery period. *Oliver* places a new premium on pleading all of the specifics in the operative complaint, meaning the specific barriers in suit must be pled in the operative complaint.

In the instant action, we have sufficient time before the close of discovery to entertain a seasonable motion under Rule 16 to file an amended complaint to list all further barriers. This would meet the holding of *Oliver*. *Oliver* itself is not a bar to the discovery at issue. Such an amendment could also satisfy *Chapman*. So, the cited decisions do not as a matter of law bar the discovery ordered by Judge Corley.

The real question is whether counsel for plaintiffs have made the showing required by Rule 26(b)(3)(A) to invade the qualified protection for trial-preparation materials. The most troubling aspect concerns whether counsel for plaintiffs unreasonably failed to conduct their own surveys back when the opportunity was available. When each disabled plaintiff came to counsel, the identity of the noncompliant store was obviously known to the plaintiff who, after

2

1  all, had gone there. A barrier survey for that store could then have been undertaken at plaintiff's
2  expense. Plaintiffs' counsel were interested, however, in pursuing claims only as to Burger King
3  stores whose premises were owned by BKC and then leased to the franchisees ("BKLs") and
4  were *not* interested in pursuing claims as to Burger King stores leased by franchisees from others
5  ("DTLs"). Of the 600-plus Burger Kings in California, 96 are BKLs.

6  Before this litigation, counsel for both sides were already engaged in pre-suit
7  communications. Counsel for BKC told counsel for plaintiffs that BKC was willing, if asked
8  as to a specific location with alleged barriers, to state whether or not it was a BKC-owned
9  location, that is, whether or not it was a BKL. Instead, however, counsel for plaintiffs insisted
10 on receiving a statewide list of all BKC-owned locations. BKC refused to turn over such an
11 omnibus list of all BKLs. As a result, plaintiffs' counsel never asked for the information on all
12 specific stores visited by disabled clients, although counsel did do so for some locations and
13 BKC responded promptly and appropriately.

14 Why counsel for plaintiffs spurned this opportunity is a mystery. Possibly it was because
15 counsel for plaintiffs wanted to keep secret the locations they believed had barriers and for
16 which they had plaintiffs ready to proceed, thinking it would give BKC too much insight into
17 their case or would afford BKC a head start on undertaking remediation. This is only informed
18 speculation based on experience. What is nonspeculative is that BKC refused to turn over a
19 statewide BKL list, that BKC had offered to advise whether any particular location was
20 BKC-owned, and that plaintiffs' counsel did not take even close to full advantage of that offer
21 and performed few or no surveys until after this litigation had commenced.

22 Meanwhile, BKC acted responsibly and eventually began to remediate barriers.
23 Acting through counsel, BKC did surveys of all its company-owned stores and began
24 remediation. By necessity, this meant that any plaintiff surveys done later on would miss any
25 deficiencies fixed in the process. A few years passed. Counsel for plaintiffs now want to go
26 back and to discover the work-product surveys to see how bad it was before the fixes. Our
27 public policy is to encourage voluntary remediation and we must realize that in allowing such
28 discovery we risk discouragement of surveys and remediation in the first place.

3

As for injunctive relief, the most probative survey would be one done *now*, for a new one done *now* would be fresher in time than those done years ago. There is no need to invade the defense work product for purposes of injunctive relief. We must remember that under the ADA, injunctive relief is the only relief available (other than costs and attorney's fees). Plaintiffs do, in fact, have their own expert at work on this and the job seems about forty percent done. The work product at issue should not be invaded for this purpose and the surveys will not be deemed admissible for this purpose.

As for damages, only the California claims allow for recovery of such relief. Such relief would be for the period from October 2006 to the date of any amended complaint herein, counsel having previously agreed that the limitations period for damages would extend back to October 2006. This is where the surveys at issue would be illuminating and admissible.

\* \* \*

This order agrees fully with Judge Corley on all but one point and that point concerns the excuse given by counsel for plaintiffs for spurning the opportunity to learn ownership of specific locations so as then to undertake their own survey of those stores. Plaintiffs' counsel blames BKC for refusing to hand over a statewide list of all its company-owned premises. BKC, however, had no duty to turn over such a list, at least prior to litigation. BKC was willing to say whether or not it owned any specific location. In the Court's view, instead of spurning it, counsel for plaintiffs should have snapped up this opportunity and should have arranged for surveys of those locations.

\* \* \*

Nonetheless, the Court agrees that the surveys should be turned over but on the schedule and conditions set forth below. Here is why.

*First*, based on the *in camera* inspection of samples, the surveys do not include opinions or mental impressions of attorneys or investigators. The surveys only include measurements, such as how high a counter was or how many pounds of pressure were needed to open a door. Measurements like this are the least protectable type of work product. To be sure, the surveys will be a ready-made roadmap to exposure for nonconforming features. Still, measurements,

4

without opinions or mental impressions are all that they contain. The surveys are akin to photographs of a train wreck before the cleanup. We would ordinarily require turnover of the photographs once the scene is restored to normal. So too here. BKC has remediated most or all of the violations, so now the best and only proof of past violations is the survey for that store. This alone would not overcome plaintiffs' failure to undertake their own surveys, but this factor reduces the harm in allowing the discovery.

*Second*, based on experience, the Court is reasonably certain that at trial, BKC will argue and its witnesses will testify that they undertook remediation, once plaintiffs' counsel complained in pre-suit communications and, therefore, the case is moot or largely moot. This line of defense will itself place in issue the very subject matter of the surveys. Yes, it would be possible to generalize this defense without getting into the specific deficiencies and how they were fixed. But this line of defense, which seems inevitable in the judge's experience, will fairly place in issue the extent of repairs and, therefore, the extent of noncompliance before the repairs. In these circumstances, it will be fair for plaintiffs to have the opportunity to meet the defense argument. The surveys will be needed to do so.

*Third*, plaintiffs are correct that, in response to an interrogatory under Rule 33, BKC would have a duty, on a store-by-store basis, to reveal the historical raw measurements, given that BKC knows the information. That BKC learned the information by sending an investigator out with a tape measure would not matter. A factoid is a factoid. A measurement is a measurement. Since BKC counsel and its client now know the factoid or measurement, the factoid or measurement can be extracted by Rule 33. The factoid or measurement itself is not privileged. Given this, and given that turning over the surveys will reveal nothing that would not already be discoverable, the practical course is to require production of the surveys themselves.

\* \* \*

While it is perhaps galling that plaintiffs' counsel failed to conduct their own surveys, they will not be allowed a free ride at BKC's expense. As a condition of obtaining any survey, plaintiffs' counsel must first pay one-half of the expense incurred by BKC in obtaining the

5

survey.  (If BKC overreaches on this score, this condition will be deleted, so BKC should avoid exaggeration.)

Further conditions are as follows:  No survey need be turned over until a class for that store is certified.  (So long as the suit is an individual one, the claimant ought to be able to remember the barriers and the need for wider proof is less compelling.  Once a class is certified as to a store, however, more barriers will be in play.)  No survey need be turned over, moreover, until after plaintiffs' expert has completed his own survey of the location.  The BKC survey at issue, once turned over, may then be used to seek leave to amend the complaint as to barriers at that store (to comply with *Oliver*) so long as the motion is seasonably made.  To reduce the risk of false claims and misshapen memories, counsel and their agents may not reveal to any plaintiff or actual or potential class member, directly or indirectly, the contents of the report (or the pleading amendments based thereon).  Subject to possible trial modification, counsel may not introduce the survey in evidence until after all witnesses claiming to have encountered barriers at that store have testified in the case in chief for plaintiff.  The surveys will be admissible only to prove the features at the time of the surveys and not for purposes of possible injunctive relief.  Production of the surveys will be for attorney's eyes only, subject to the foregoing uses.  Photographs taken in connection with the surveys will be produced and treated as the same as the surveys.

**IT IS SO ORDERED.**

Dated:  December 7, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

6