IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

VALLABHAPURAPU, et al.,

    Plaintiffs,

  v.

BURGER KING CORPORATION,

    Defendant

                                      /

No. C 11-00667 WHA

**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT; MOTION FOR AN AWARD OF ATTORNEY'S FEES AND COSTS**

## INTRODUCTION

This is an ADA disability-access class action alleging barriers to access on behalf of mobility-impaired customers of restaurants in California leased by defendant Burger King Corporation. The parties have filed a joint motion for final approval of the settlement. Class counsel also requests attorney's fees and litigation costs and expenses. For the reasons explained below, final approval of the proposed settlement is **GRANTED**. Plaintiffs' motion for attorney's fees and costs is **GRANTED**.

## STATEMENT

This action is the second part of a class action originally asserted against Burger King Corporation. Plaintiffs alleged that restaurants that Burger King Corporation leases to its franchisees in California violated the Americans with Disabilities Act, the Unruh Civil Rights Act, and the California Disabled Persons Act. Plaintiffs alleged that Burger King violated state

and federal regulations by pursuing discriminatory policies or practices that resulted in unlawful architectural or design barriers which denied customers who use wheelchairs or scooters access to services at these Burger King restaurants.

In the first part of the litigation, *Castaneda v. Burger King Corporation*, No. 08-04262 WHA, ten classes were certified as to ten of the alleged non-compliant restaurants. The parties reached a class settlement, final approval of which was granted by this Court in July 2010.

Plaintiffs then filed this action in February 2011 against Burger King. The complaint in this action brings the same claims and asserts class action allegations as to the remaining 86 restaurants not included in the *Castaneda* settlement. Plaintiffs reached a settlement agreement with Burger King regarding the remaining 86 restaurants in this action.

The proposed class action settlement provides for significant injunctive relief and damages. Specifically, the injunctive relief includes all of the measures agreed to in *Castaneda*, including the elimination of all accessibility barriers and the use of mandatory checklists with specific accessibility items for remodeling, alterations, repairs, and maintenance. An additional remedial measure not included in the *Castaneda* settlement is that Burger King will include in its manual to its franchisees the recommendation that franchisees check the force required to open all public exterior and restroom doors twice per month to ensure that they do not require more than five pounds of pressure to open. The proposed settlement provides for a cash payment of $19,000,000 to satisfy and settle all claims for damages, as well as any attorney's fees and costs awarded (Settlement Agreement ¶ 9.1.1). The settlement agreement provides that it "does not in any way affect the rights, obligations, or restaurants at issue in the *Castaneda* Settlement" (*id.* at ¶ 1.5). Of the 86 restaurants originally at issue, the injunctive relief applies to the 77 Burger King restaurants that are still in business and are leased by Burger King to franchisees in California.

After reviewing the proposed class settlement and revising the proposed notice forms, the Court directed plaintiffs to give notice to class members so that a fairness hearing could be held. A "short-form notice" was approved, which was required to be posted for 30 calendar days at each of the restaurants covered by the class certification order. A "long-form notice" was also

1  approved, which was to be sent out to existing damage claimants and to northern California
2  disability rights groups. A fairness hearing was held on October 25, 2012 and addressed (1)
3  whether the proposed settlement should be approved, and (2) the amount of fees and costs to be
4  awarded to class counsel from the settlement fund.

The deadline for class members to object or opt out of the settlement was September 17, 2012. Class members can opt in to receive monetary damages by November 15. Each damages claimant is required to complete a claim form documenting his or her eligible visits to one of the 86 restaurants where he or she encountered a barrier to access. As in *Castaneda*, the proposed settlement provides that monetary awards to each damages claimant will be distributed pro rata based on the total number of visits by each damages claimant, with a maximum number of six visits for which each claimant may obtain recovery. Class members who do not opt in to receive damages claims do not release their rights to pursue such damages claims separately.

Plaintiffs also move for a combined $4,823,082.58 in attorney's fees and litigation costs and expenses, consisting of reimbursement of $230,776.77 in litigation costs and expenses, and $4,592,305.81 in attorney's fees. To provide class members with an opportunity to review and comment on the application for an award of attorney's fees and costs, class counsel posted the application on their website three weeks prior to the September 17 object/opt-out deadline (Lah Decl. ¶ 7).

**ANALYSIS**

This order first explains why the pending settlement is fair, reasonable and adequate under FRCP 23(e) and *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (setting forth the factors to be considered when evaluating class action settlements). Next, this order discusses why the awarded attorney's fees are reasonable.

**1.  THE SETTLEMENT AGREEMENT IS FAIR, REASONABLE, AND ADEQUATE.**

Having considered the terms of the settlement agreement, proposed plan of distribution, and adequacy of notice to class members, and having considered the motion for final approval of the settlement agreement, the declarations submitted therewith, oral argument by counsel, and all other documents of record in this matter, this order holds that the settlement agreement

3

is in the best interests of the class and is fair, reasonable, and adequate under the factors set forth in *Hanlon*.

No objections to the settlement have been filed or received by counsel or the claims administrator. One class member opted out (Keough Decl. ¶¶ 14–15). Class counsel attempted to contact the individual several times and confirmed that she was not interested in participating in the settlement (Lah Decl. ¶ 6). The settlement agreement provides for injunctive relief, including the elimination of alleged accessibility barriers, the use of mandatory checklists with specific accessibility items for remodeling, alterations, repairs and maintenance, and the monitoring of compliance. Burger King will also include in its manual a guideline that franchisees should check to ensure the appropriate force is required to open public exterior and restroom doors. The settlement agreement provides for the Court to retain jurisdiction to enforce the terms of settlement until October 26, 2016, four years after the settlement agreement has been finalized.

The settlement also provides for a cash payment of $19,000,000 to the settlement class. Monetary awards to each claimant in the settlement class will be distributed pro rata based on the total number of visits by each damages claimant to one of the 86 restaurants where he or she encountered a barrier, with a maximum number of six visits for which each damages claimant can obtain recovery. Each of these damage claimants must complete a claim form documenting his or her eligible visits. Payment for the costs of notifying and administering the settlement up to $100,000 shall be paid by class counsel's awarded attorney's fees, while costs above those amounts shall come from the settlement fund.

The class administrator reported that, as of October 11, 620 individuals had submitted claim forms to recover damages. The class administrator estimated that, assuming a net settlement fund of $14,250,000, the average award value is $22,983.87 per processed claim, $1,253.62 per store visit based on a raw store visit count, and $4,968.61 per store visit based on an adjusted store visit count (limiting the number of eligible visits per claimant to six visits) (Keough Decl. ¶ 16). The parties state that, if the numbers reported by the claims administrator do not change significantly, the average recovery per claimant will be 50 percent above the

4

average recovery in *Castaneda* (Br. 12–13). At the final fairness hearing, class counsel stated that as of October 22, 677 individuals have submitted claim forms to recover damages.

Accordingly, final approval of the settlement and plan of allocation is hereby **GRANTED**.

### 2. ATTORNEY'S FEES AND COSTS.

Despite the settlement agreement and defendant's acquiescence to the attorney's fees sought, a court must still ensure that the attorney's fees and costs awarded are "fair, reasonable, and adequate." *See Staton v. Boeing, Co.*, 327 F. 3d 938, 963–64 (9th Cir. 2003). Common fund fees, as we have here, are consistent with the "American Rule" (*i.e.,* that each party pays for its own litigation expenses), and "a litigant or lawyer who recovers from the common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

District courts in this circuit may use two different approaches to gauge the reasonableness of a requested fee award under the traditional common-fund approach. The first is the lodestar method, whereby a reasonable number of hours is multiplied by a reasonable hourly rate. The lodestar may include a risk multiplier to enhance the fees under certain circumstances, in which a court considers "the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Hanlon*, 150 F.3d at 1026. Our court of appeals, however, also allows a calculation based upon a percentage of the common fund. *See Staton*, 327 F.3d at 967–68. The benchmark percentage is 25 percent. *See Hanlon*, 150 F.3d 1011, 1026. Here, the requested $4,592,305.81 in attorney's fees equals approximately 25 percent of the settlement fund, after costs.

In *Castaneda*, class counsel reduced their lodestar by $1,106,625.35, representing over 4,500 hours for work attributable to the 86 restaurants covered by the current settlement (*Castaneda* Dkt. No. 346 ¶ 41; Fox Decl. ¶ 39). After *Castaneda*, class counsel spent an additional 5,568.53 hours on the current settlement, after exercising billing judgment and deleting 557.6 hours (Lee Decl., Exh. B). In total, class counsel claim to have expended over ten thousand hours in this six-year action (*ibid.*). After applying what they assert are reasonable

5

rates to those hours (ranging from $335 to $825 for the attorneys, and from $225 to $275 for paralegals and other staff), counsel calculate a lodestar of $3,546,721.60 (Br. 12).

Counsel request that this order enhance the total fee award by applying a multiplier of 1.29, which this order finds warranted given "the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment" in this action. *Hanlon*, 150 F.3d at 1029. The determinative factor, however, is the benefit to the class. Even after the requested attorney's fees and costs are deducted, the monetary damages of over $14 million — which, according to plaintiffs, is the largest total recovery amount ever obtained in a disability access case — is only part of the relief obtained for class members. As noted above, the settlement also provides for considerable measures of injunctive relief at the restaurants at issue to eliminate accessibility barriers. Because the deadline for claims is November 15, 2012, the average monetary recovery per damages claimant is yet unknown; however, the $14 million net settlement fund, by itself, is very good. Based on the current number of processed claims, class counsel estimates that the average recovery per claimant will be nearly 50 percent above the average recovery in *Castaneda* (Br. 12–13). Accordingly, the benefits provided to the class warrant the requested fee award. Class counsel's request for $4,592,305.81 in attorney's fees is fair, reasonable, and adequate.

Plaintiffs' counsel seek $230,776.77 in litigation costs and expenses. This order finds that the costs and expenses, as detailed by class counsel, are reasonable. Additionally, plaintiffs' counsel have not included in this amount the $100,000 in claims administration costs that they have agreed to pay out of their recovered attorney's fees. For the reasons stated above, the request for attorney's fees and reimbursement of litigation costs and expenses is **GRANTED**.

**CONCLUSION**

Accordingly, it is hereby ordered as follows:

1. The Court hereby finds that the settlement is fair, reasonable, and adequate as to the class, plaintiffs, and defendants, that it is the product of good faith, arms-length negotiations between the parties, and that the settlement is consistent with public policy and fully complies with all applicable provisions of law. The breadth of the release to be imposed on the absent

class members is sufficiently narrow. Absent class members who have not opted in to pursue damages claims release only non-monetary claims relating to the accessibility of the restaurants covered by the settlement based on conduct preceding final approval of the settlement agreement. They do not release any claims for monetary damages. The final settlement is therefore approved.

     2. The notice given to class members and potential damages claimants was the best notice practicable under the circumstances, was valid, gave due and sufficient notice to all class members, and complied fully with the Federal Rules of Civil Procedure, due process, and all other applicable laws. A long-form notice was mailed to all known damages claimants described in the proposed settlement. A short-form notice was posted for a period of 30 calendar days in all Burger King restaurants covered by the settlement, which provided information for obtaining the long-form notice and opt-in/opt-out form. The short-form notice was also mailed to northern California disability rights groups. The long-form and short-form notices provided information regarding the manner in which class members could object to or participate in the settlement and the manner in which class members could opt out of the class. A full and fair opportunity was afforded to class members to participate in the proceedings to determine whether the proposed settlement should be given final approval. Accordingly, this order holds that all class members who did not exclude themselves from the settlement by filing a timely request for exclusion are bound by this settlement order and judgment.

     3. The Court retains continuing jurisdiction over the class action, named plaintiffs, the class, and defendant for four years (until October 26, 2016) from the date of entry of this order in order to supervise the implementation, enforcement, construction and interpretation of the revised settlement agreement and this order.

     4. The Court hereby awards to plaintiffs' counsel attorney's fees of $4,592,305.81 and $230,776.77 in litigation costs and expenses, to be paid from the settlement fund. Plaintiffs' counsel shall be awarded the $230,776.77 as well as 50 percent of the attorney's fees now; the remaining 50 percent may be recovered only after counsel certifies that the fund is completely

wound up.  If problems do arise and if management of this fund so necessitates, any shortfall in funds to pay class members may be deducted from the unpaid attorney's fees.

    5. Damages claimants who have already opted in or intend to opt in to receive monetary damages have until November 15, 2012, to complete, sign, and submit their claim forms for shares of the damages fund.  Eligibility for payments from the net settlement fund shall be determined based on the procedure set forth in section nine of the settlement agreement.

**IT IS SO ORDERED.**

Dated:  October 26, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE